[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Federle v. Warren Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-849.]

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-849

THE STATE EX REL. FEDERLE ET AL. *v.* WARREN COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Federle v. Warren Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-849.]

*Prohibition—Writ sought to prevent a board of elections from placing a referendum on a zoning resolution on the ballot—Mandamus—Writ sought to order board of elections to sustain property owner's protest of a referendum—Property owners failed to show that the board of elections abused its discretion or clearly disregarded applicable law—Claim that a petition for referendum was legally insufficient is a claim for declaratory and injunctive relief, not for an extraordinary writ—Writs denied.*

(No. 2019-0104—Submitted February 19, 2019—Decided March 13, 2019.)

IN PROHIBITION and MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited elections case, relators, John A. and Sherry Federle, seek (1) a writ of prohibition ordering respondent, the Warren County Board of Elections, to remove from the May 7 ballot a referendum on a 2018 resolution adopted by the Wayne Township Board of Trustees relating to property on which the Federles hope to construct a housing development and (2) a writ of mandamus ordering the board to sustain John Federle's protest of the referendum. We deny the writs.

## I. FACTS

{¶ 2} R.C. 519.021 grants townships the power to establish planned-unit developments ("PUDs") in order to promote the general welfare and to encourage innovation in planning and building and the efficient use of land resources. Within a PUD, township zoning regulations "need not be uniform" and may vary to "accommodate unified development." *Id*. PUDs may "integrate residential, commercial, industrial, or any other use." *Id*. The zoning code of Wayne Township provides that the PUD zoning classification "is intended to provide applicants with more flexibility in design and development of land by relaxing conventional zoning district regulations." Wayne Township Zoning Code 1.309.1. PUD regulations may apply to property only at the election of the property owner, with the approval of the township trustees. *Id*. at 1.309.2; R.C. 519.021.

{¶ 3} Wayne Township's zoning code permits a PUD to be applied to a property as an "overlay," Wayne Township Zoning Code 1.309.1, in which case, the PUD regulations supplement the underlying zoning district, *id*. at 1.309.4 and 1.309.5(A)(2). This allows owners to use property "in a manner or intensity not permitted as-of-right by the current [zoning] district regulations." *Id*. at 2.501. The Wayne Township zoning code provides for two types of PUD overlays: a general PUD overlay and a village-transition PUD overlay ("VT-PUD overlay"). A general PUD overlay may be applied to property located anywhere in the township. *Id*. at 1.309.4(A)(1) and 2.505.1(A). By contrast, a VT-PUD overlay—the type of

overlay at issue in this case—may be applied only to property located within the VT-PUD overlay *district*. *Id*. at 1.309.5(A)(1) and 2.506.1(A). The VT-PUD overlay district is a limited area designated on the township's official zoning map, roughly encircling the village of Waynesville in the central part of the township.

{¶ 4} Wayne Township has an approval process that applies to both general PUD overlays and VT-PUD overlays. *Id*. at 2.504.1. That process has three stages. *Id*. at 1.309.7.

- In Stage 1, the "Rezoning Process," a "PUD rezoning" occurs concurrently "with approval of a PUD Conceptual Plan and PUD Proposal Document." Wayne Township Zoning Code 1.309.7(A). Property owners initiate this stage by completing a "rezoning application form." *Id*. at 1.309.8(A)(1). This stage culminates in a "legislative decision" by the township trustees regarding the submitted Stage-1 plans. *Id*. at 1.309.7(A)(3).

- In Stage 2, the "Preliminary Site Plan Process" a site plan is approved after a public hearing. *Id*. at 1.309.7(B). Property owners initiate this stage by sending a letter to the zoning inspector. *Id*. at 1.309.8(B). This stage culminates in an "administrative decision" by the trustees. *Id*. at 1.309.7(B)(5).

- In Stage 3, the "Final Site Plan Process," the final plan is certified. *Id*. at 1.309.7(C). Property owners initiate this stage by sending a letter to the zoning inspector. *Id*. at 1.309.8(C). This stage culminates in a "ministerial certification" by the zoning inspector that allows permits to be issued for the approved PUD use and development. *Id*. at 1.309.7(C).

{¶ 5} In June 2018, John Federle ("Federle") filed an application with the Wayne Township Zoning Office on a form titled "Application for Zoning Map Amendment." The form asked applicants to check one of the following: zoning change, PUD, variance, conditional use, or temporary zoning permit. Federle checked "PUD." He also wrote the following:

- Under "Legal Description of Property to be Reclassified"—"40.7003 acres currently owned by John and Sherry Federle, with the addition of 1.29 acres currently owned by Thomas E. and Lisa Patton will be included in the Village Transition PUD."

- Under "Property is Currently Zoned For"—"The property is currently zoned R-1 (Residence Single Family Zone) with a Village Transition PUD Overlay District."

- Under "Request Property to be Changed to Zone"—"The property will move to the Village Transition PUD."

- And under "Reason for this Application"—"The current R-1 property *will be rezoned* to the Village Transition PUD to help the more dense .30 acre +/- lots within the Village [of Waynesville], evolve to the minimum 0.50 acre lots provided in the Federle Subdivision." (Emphasis added.)

Along with the application, Federle submitted a "PUD Proposal Document."

{¶ 6} In July, the Wayne Township trustees adopted "RESOLUTION 2018-31 CONCERNING AN APPLICATION FOR A ZONING MAP AMENDMENT TO *REZONE* 5615 LYTLE RD. (40.7003 AC) AND SPLIT ZONING 5621 LYTLE RD. (THE REAR 1.29 ACS) FROM R-1 TO VT-PUD." (Capitalization and underlining sic; emphasis added.) On August 16, a resident submitted to the township a petition for a township zoning referendum on resolution No. 2018-31. The township conveyed the petition to the board of elections to verify the signatures, and on August 21, that board certified that the petition contained a sufficient number of valid signatures. That same day, the township trustees unanimously approved a resolution certifying the petition to the board for placement on the ballot. The August 21 resolution reiterated that resolution No. 2018-31 had "amend[ed] the current zoning district" for the subject properties "from Residence Single Family Zone (R-1) * * * to Village Transition PUD."

4

**{¶ 7}** On November 1, Federle submitted to the board of elections a protest of the referendum, arguing that the township trustees' denomination of its action as a rezoning was a mistake because he sought only to develop the property in accordance with preexisting zoning and that his request should therefore not be subject to referendum. On November 5, the board certified the referendum to the ballot, but on December 19, it held a hearing on the protest, at which it heard sworn testimony from Federle and another township resident. At the conclusion of the hearing, the board rejected Federle's protest. The board chairman stated that the board based its determination on its conclusion that the petition was sufficient and valid and that the board was "not in a position to second guess or to act as an appellate court for what the township trustees do."

**{¶ 8}** On January 23, 2019, the Federles filed this action seeking a writ of prohibition and a writ of mandamus. We ordered the case to be briefed on the expedited schedule set forth in S.Ct.Prac.R. 12.08.

## II. ANALYSIS

**{¶ 9}** The Federles seek a writ of prohibition to prevent the Warren County Board of Elections from certifying the referendum petition and submitting the issue to the voters on the May 7 ballot and a writ of mandamus ordering the board to sustain Federle's protest. We deny both writs.

### A. Prohibition

**{¶ 10}** The Federles are entitled to a writ of prohibition if they establish that (1) the board of elections exercised quasi-judicial power, (2) the exercise of that power was unlawful, and (3) they have no adequate remedy in the ordinary course of the law. *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 14-15. They must prove entitlement to a writ of prohibition by clear and convincing evidence. *State ex rel. Evans v. McGrath*, 153 Ohio St.3d 287, 2018-Ohio-3018, 104 N.E.3d 779, ¶ 4; *State ex rel.*

*Kilby v. Summit Cty. Bd. of Elections*, 133 Ohio St.3d 184, 2012-Ohio-4310, 977 N.E.2d 590, ¶ 27.

{¶ 11} The Federles have established the first element, because the board of elections exercised quasi-judicial power by denying Federle's protest and placing the referendum on the ballot after an R.C. 3501.39 hearing that included sworn testimony. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 28. And they have established the third element, because the proximity of the election renders them without an adequate remedy at law, as "any appellate process would last well past the election." *Id*. at ¶ 29.

{¶ 12} The Federles have, however, failed to establish the second element required for a writ of prohibition—that the board's exercise of its quasi-judicial power was unlawful. To establish this element, the Federles must show that the board engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable legal provisions. *McCord* at ¶ 30. There is no allegation of fraud or corruption here; the Federles argue that the board abused its discretion and clearly disregarded applicable law by failing to keep the referendum off the ballot because, they assert, resolution No. 2018-31 was not a rezoning and was therefore not subject to referendum. But Federle failed to provide the board of elections with sufficient evidence of a 2015 rezoning for us to conclude by clear and convincing evidence that the board abused its discretion by denying the protest.

### 1. Rezoning and Referenda

{¶ 13} A township's action that effects a rezoning of property is a legislative act that is subject to referendum under R.C. 519.12(H), but an action that merely approves development as being in compliance with existing zoning standards is an administrative act that is not subject to referendum. *State ex rel. Zonders v. Delaware Cty. Bd. of Elections*, 69 Ohio St.3d 5, 13, 630 N.E.2d 313 (1994); *see also* R.C. 519.021. If an act is administrative and therefore not subject

to referendum, "the board of elections is 'required to withhold the * * * referendum from the ballot.' " *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, ¶ 30, quoting *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 17; *see also State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, ¶ 19; R.C. 519.12(H); R.C. 3501.11(K)(1); R.C. 3501.39(A)(1) and (2).

{¶ 14} "[T]he application of preexisting PUD regulations to a specific piece of property which is zoned under a non-PUD classification * * * effects a rezoning of the property and is thus a legislative act subject to referendum." *Zonders* at 13. "However, where specific property is already zoned as a PUD area, approval of subsequent development as being in compliance with the existing PUD standards is an administrative act which is not subject to referendum." *Id.*, citing R.C. 519.021. While this court decided *Zonders* under a prior version of R.C. 519.021, our holding in *Zonders* is consistent with the current version of the statute:

> Property owners who wish to have planned-unit development regulations apply to their property may apply to have the zoning map amended pursuant to section 519.12 of the Revised Code to rezone their property as a planned-unit development and no longer subject to any previously applicable zoning regulations. * * * After the designation of the property as a planned-unit development on the zoning map, any approval or disapproval of subsequent use or development of property in a planned-unit development as being in compliance with regulations established as authorized by this division shall not be considered to be an amendment or supplement to a township zoning resolution for the purpose of section 519.12 of

> the Revised Code, but may be appealed pursuant to Chapter 2506 of
> the Revised Code.

R.C. 519.021(A); *see also* R.C. 519.021(B) and (C). Accordingly, if resolution No. 2018-31 rezoned the property at issue, it is subject to referendum. If it merely approved development as being in compliance with already applicable PUD zoning, it is not.

### 2. Arguments and Evidence

{¶ 15} The Federles claim that the board of elections abused its discretion and clearly disregarded applicable law by failing to sustain Federle's protest. In the protest, Federle asserted that when the township created the VT-PUD overlay district in 2015, it rezoned the entire district (including the subject property) as a PUD, so the subject property was therefore not rezoned as a PUD in 2018. That is *possible* under R.C. 519.021, which provides three procedures through which PUDs may be included in a township's zoning resolution.

- Under R.C. 519.021(A), the township trustees may adopt PUD regulations without rezoning any property; property owners who wish to have the PUD regulations apply to their properties must then apply to have their properties rezoned as a PUD.

- Under R.C. 519.021(B), in the absence of any township-established PUD regulations, property owners may apply to establish a new PUD for their property and to rezone their property.

- Under R.C. 519.021(C), the township trustees may adopt PUD regulations and rezone property as PUDs; property owners who wish to have the PUD regulations apply to their property must apply to have their development plan approved as in compliance with the PUD regulations.

Under the procedure set forth in R.C. 519.021(C), the township *could have* rezoned the subject property as a PUD when it created the applicable PUD regulations in

2015. However, the Federles' argument that the board of elections abused its discretion depends on Federle having established before the board that the property was indeed rezoned as a PUD in 2015. And the Federles have not established by clear and convincing evidence that they provided the board of elections with evidence sufficient to establish that fact.

{¶ 16} Much of the evidence is *inconsistent* with the claim that the township rezoned all of the property within the VT-PUD overlay district as PUDs in 2015.

{¶ 17} First, Wayne Township Zoning Code 2.504.1 and 1.309.7(A) subject applications to approve a PUD in the VT-PUD overlay district to a three-stage approval process, and the first stage is a rezoning. However, if the entire VT-PUD overlay district was rezoned at the time the district was defined, the first stage in the application to approve a PUD would be unnecessary.

{¶ 18} Second, the township's VT-PUD overlay regulations refer to a PUD overlay rezoning process. Wayne Township Zoning Code 2.506.1(C) notes that only properties with an underlying zone of R-1 can qualify for a VT-PUD overlay and that properties with an underlying zone other than R-1 require rezoning to R-1 to qualify. It then provides that "[a] rezoning of the underlying zoning district of one (1) or more of the properties involved may run concurrently *with the PUD Overlay rezoning process*." (Emphasis added.) And Wayne Township Zoning Code 2.506.1(A) describes the process for applying a VT-PUD overlay to property outside of but contiguous to the VT-PUD overlay district. It says that owners of such property may "apply concurrently for both an expansion of the [VT-PUD overlay] district to include such property and a rezoning of the property to a [VT-PUD overlay]"—implying that the inclusion of property in the VT-PUD overlay district and the rezoning of property as a VT-PUD overlay are two distinct actions.

{¶ 19} Third, Federle testified that he met with the township zoning inspector, shared with her his plans and his desire to apply the VT-PUD overlay to the property, and was instructed to complete an application form. An application

form is required for Stage 1 of Wayne Township's PUD approval process—which is a rezoning. Wayne Township Zoning Code 1.309.7(A), 1.309.8(A)(1). Stage 2, the site-plan approval, begins with a letter, not an application. *Id*. at 1.309.7(B), 1.309.8(B). And Federle submitted an application form, not a letter.

{¶ 20} Fourth, in his application, Federle stated that "[t]he current R-1 property *will be rezoned* to the Village Transition PUD." (Emphasis added.)

{¶ 21} Fifth, the trustees' resolution certifying the petition for a referendum to the board of elections states that resolution No. 2018-31 approved a rezoning of the subject property.

{¶ 22} Sixth, the key to the Wayne Township zoning map indicates that the VT-PUD overlay *district* is identified by blue slanted lines within a solid blue border. But the map has a separate identification for PUD overlays, including both general PUD overlays and VT-PUD overlays: a solid blue border with the letters "PUD" inside, in blue. And *within* the VT-PUD overlay district shown on the map, some property is identified with that PUD identification, but most of the VT-PUD overlay district—including the subject property—is *not* identified as a PUD.

{¶ 23} As the board of elections notes, it seems apparent that the *township trustees* believed that resolution No. 2018-31 effected a rezoning.

{¶ 24} By contrast, the evidence that the Federles point to in support of their argument here that the subject property, along with the entire VT-PUD overlay district, was rezoned as a VT-PUD overlay in 2015 consists of (1) Federle's statements in his testimony before the board and in an affidavit explaining that his "understanding" is that his property was rezoned in 2015, (2) Federle's having checked the "PUD" box as opposed to the "zoning change" box on the first page of his application to the trustees, (3) the minutes from a 2015 Wayne Township trustees meeting reflecting the passage of "RESOLUTION 2015-34 APPROVING A ZONING TEXT AND MAP AMENDMENT CREATING A VILLAGE TRANSITION PLANNED UNIT DEVELOPMENT OVERLAY DISTRICT,"

(capitalization and underlining sic), and (4) a copy of the zoning map showing that the subject property is inside the VT-PUD overlay district. Aside from Federle's affidavit submitted to this court, which echoes his hearing testimony, this is the same evidence that Federle presented to the board of elections.

{¶ 25} On this record, the Federles have failed to establish by clear and convincing evidence that the 2015 resolution rezoned the subject property and that Federle presented sufficient evidence to the board of elections such that the board abused its discretion or clearly disregarded applicable law by failing to so find. The evidence upon which the Federles rely before this court and on which Federle relied before the board of elections shows that Wayne Township amended its zoning regulations in 2015 to create a VT-PUD overlay district, that on an undated map (which may or may not reflect the boundaries of the VT-PUD overlay district upon its creation in 2015 or at the time of Federle's application in 2018), the subject property is within the VT-PUD overlay district, and that the Federles believe that the subject property was zoned as a PUD in 2015. This does not, however, establish that the creation of the VT-PUD overlay district rezoned all the property within the district.

{¶ 26} The Federles' argument relies on the assumption that the creation of the VT-PUD overlay district rezoned the property within that district as PUDs. But while R.C. 519.021(C) would permit this, R.C. 519.021(A) allows a township to adopt PUD regulations that "do not automatically apply to any property in the township" and that do not rezone any property upon their adoption. R.C. 519.021(A) neither expressly permits nor forbids a rule that such regulations may be applied only within a designated portion of the township. Regulations established under R.C. 519.021(A) apply to property only if its owners seek a rezoning. Notably, the Federles did not specifically cite—let alone attempt to explain—either R.C. 519.021(A) or (C) before the board of elections or this court.

11

**{¶ 27}** As the board of elections points out, the record before it indicated that Federle requested—and the township trustees approved in their 2018 resolution—a zoning change from R-1 to VT-PUD overlay. The board argues that while it was cognizant of the issue raised by Federle at the protest hearing, it was not in a position to second guess the appropriateness of the township's action. While the board had an obligation to sustain the protest if Federle established that resolution No. 2018-31 was administrative and therefore not subject to referendum, *Ebersole*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, at ¶ 30, Federle failed to present the board with sufficient evidence and argument for this court to find by clear and convincing evidence that the board of elections abused its discretion or clearly disregarded applicable law by failing to sustain the protest.

**{¶ 28}** A contrary holding would require us to find that the board of elections should not only have relied on Federle's insufficient evidence but should also have analyzed and applied R.C. 519.021(A) and (C), which Federle did not cite to the board, and which, as noted above, do not clearly eliminate the possibility that the 2018 resolution was a rezoning. However, "the board [of elections] does not abuse its discretion by limiting the scope of a protest hearing to the specific objections raised by the written protest necessitating the hearing." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 308, 686 N.E.2d 238 (1997). Under the circumstances of this case, the Federles have not shown by clear and convincing evidence that the board of elections abused its discretion or clearly disregarded applicable law.

### B. Mandamus

**{¶ 29}** The Federles also seek a writ of mandamus ordering the board of elections to sustain the protest, i.e., to find that the petition is legally insufficient and to therefore keep the referendum off the ballot. This is a claim for declaratory and injunctive relief over which this court lacks jurisdiction. *Tam O'Shanter*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 13.

### III. CONCLUSION

**{¶ 30}** Because the Federles are not entitled to a writ of prohibition or a writ of mandamus, we deny both writs.

Writs denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

George & Underwood, L.L.C., Andrew P. George, and Tyler J. Hoffer, for relators.

David P. Fornshell, Warren County Prosecuting Attorney, and Keith W. Anderson, Assistant Prosecuting Attorney, for respondent.

_____