[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Schreiner v. Erie Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-290.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-290

THE STATE EX REL. SCHREINER *v*. ERIE COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Schreiner v. Erie Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-290.]

*Elections—Prohibition—R.C. 2961.02—Writ sought to compel board of elections to remove candidate for Ohio House of Representatives from primary-election ballot—A person is incompetent to hold a public office under R.C. 2961.02 if (1) person was convicted of a disqualifying offense, (2) public office "involves substantial management or control over the property of a state agency, political subdivision, or private entity," and (3) person's conviction has not been expunged, reversed, annulled, or pardoned—Office of state representative does not involve substantial management or control over property of a state agency, political subdivision, or private entity— Board of elections did not abuse its discretion or act in clear disregard of*

*applicable law in keeping candidate for Ohio House of Representatives on primary-election ballot—Writ denied.*

(No. 2024-0052—Submitted January 24, 2024—Decided January 29, 2024.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Dennis Schreiner, seeks a writ of prohibition against respondents, the Erie County Board of Elections and its members, Thomas Ferrell, Maryann Groot, Lisa Crescimano, and Nancy McKeen. Schreiner seeks a writ ordering the board of elections to remove Steven Kraus, a candidate for the Ohio House of Representatives, from the March 2024 primary-election ballot. Because Schreiner has not shown that the office of state representative involves substantial management or control over the property of a state agency, political subdivision, or private entity, *see* R.C. 2961.02(B), we deny the writ.

## I. FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND

{¶ 2} Kraus is a Republican candidate in the March 2024 primary election for the office of state representative for the 89th Ohio House District. In 2015, Kraus was convicted in the Ottawa County Court of Common Pleas of theft from an elderly person in violation of R.C. 2913.02, a felony of the fifth degree. He was sentenced to two years of community control and ordered to pay a $2,500 fine. Kraus successfully completed all requirements of his community control, and his community control was terminated in 2018. In 2022, the common pleas court conducted a hearing on a motion filed by Kraus to seal the record of his conviction under R.C. 2953.32. The common pleas court granted the motion on January 23, 2023, and determined that Kraus was entitled "to have his record sealed in [his] case, including any records of his arrest."

{¶ 3} On or about December 19, 2023, Kraus filed his declaration of candidacy with the board of elections to run for state representative. As part of his declaration, Kraus declared that "if elected to said office or position, I will qualify therefor." *See* R.C. 3513.07. On December 27, Schreiner filed a written protest against Kraus's candidacy with the board of elections in accordance with R.C. 3513.05. Schreiner is a registered-Republican voter living in Erie County within the 89th Ohio House District. In his protest, Schreiner argued that Kraus's declaration was invalid because Kraus was not qualified to hold office under R.C. 2961.02(B) due to his conviction of a "disqualifying offense."

{¶ 4} The board of elections held a hearing on the protest on January 5, 2024. At the hearing, Kraus stipulated that he had been convicted of a disqualifying offense for purposes of R.C. 2961.02 but argued that he was eligible to hold office because his conviction had been expunged. Schreiner argued that Kraus's conviction had been *sealed*, which he contended was not equivalent to being expunged. At the conclusion of the hearing, the members of the board of elections voted unanimously to deny Schreiner's protest, thus allowing Kraus to remain on the March 2024 primary-election ballot.

{¶ 5} On January 10, Schreiner filed this verified petition for a writ of prohibition. He seeks a writ prohibiting the board of elections from placing Kraus on the ballot in the March 2024 primary election. Kraus filed a motion to intervene as a respondent, which we granted. __ Ohio St.3d __, 2024-Ohio-156, __ N.E.3d __.

## II. ANALYSIS

### A. Legal standards

{¶ 6} Prohibition is an appropriate remedy to challenge a board of elections' decision to place a candidate on the ballot. *State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, ¶ 13. To be entitled to a writ of prohibition, Schreiner must prove by clear and convincing

evidence that (1) the board of elections exercised quasi-judicial power, (2) the exercise of that power was unlawful, and (3) he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Federle v. Warren Cty. Bd. of Elections*, 156 Ohio St.3d 322, 2019-Ohio-849, 126 N.E.3d 1091, ¶ 10. "A board of elections exercises quasi-judicial authority when it decides a protest after a mandatory hearing that includes sworn testimony." *State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 169 Ohio St.3d 161, 2022-Ohio-3138, 202 N.E.3d 684, ¶ 15. Here, the board of elections was required to and did hold a hearing on Schreiner's protest, *see* R.C. 3513.05, and it heard sworn testimony at the hearing. In addition, given the proximity of the March 2024 primary election, Schreiner lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18-19.

**{¶ 7}** The remaining question is whether the board of elections acted unlawfully when it denied Schreiner's protest. A board of elections' exercise of judicial or quasi-judicial power "is unauthorized if it engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions." *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 72 Ohio St.3d 69, 72, 647 N.E.2d 769 (1995). Schreiner does not argue that the board engaged in fraud or corruption. He instead argues that the board of elections abused its discretion and acted in clear disregard of statutes or applicable legal provisions.

### B. R.C. 2961.02: The disqualification statute

**{¶ 8}** The core issues in this case involve the interpretation of R.C. 2961.02, which this opinion calls the "disqualification statute." R.C. 2961.02 was first enacted in 2005. *See* Sub.H.B. No. 181, 150 Ohio Laws, Part IV, 6185, 6214-6215. It was last revised in 2008. *See* 2008 Sub.H.B. No. 195.

**{¶ 9}** R.C. 2961.02(A) defines various terms, including a "disqualifying offense." R.C. 2961.02(B) and (C) then provide:

(B) Any person who pleads guilty to a disqualifying offense and whose plea is accepted by the court or any person against whom a verdict or finding of guilt for committing a disqualifying offense is returned is incompetent to hold a public office or position of public employment or to serve as a volunteer, if holding the public office or position of public employment or serving as the volunteer involves substantial management or control over the property of a state agency, political subdivision, or private entity.

(C) Division (B) of this section does not apply if a plea, verdict, or finding of the type described in that division regarding a disqualifying offense is reversed, expunged, or annulled. The full pardon of a person who has pleaded guilty to a disqualifying offense and whose plea was accepted by the court or a person against whom a verdict or finding of guilt for committing a disqualifying offense was returned restores the privileges forfeited under division (B) of this section, but the pardon does not release the person from the costs of the person's conviction in this state, unless so specified.

Thus, in accordance with the disqualification statute, a person is incompetent to hold a public office if (1) the person was convicted of a disqualifying offense, (2) the public office "involves substantial management or control over the property of a state agency, political subdivision, or private entity," and (3) the person's conviction has not been expunged, reversed, annulled, or pardoned.

{¶ 10} Here, the parties agree that Kraus's 2015 felony-theft conviction for violating R.C. 2913.02 is a disqualifying offense. *See* R.C. 2961.02(A)(5) ("theft offense" in the disqualification statute has the same meaning as in R.C. 2913.01) and 2913.01(K)(1) ("theft offense" includes a violation of R.C. 2913.02). Kraus argues, however, that the office of state representative does not involve substantial

management or control over the property of a state agency, political subdivision, or private entity. Kraus and the board of elections also argue that Kraus's conviction was expunged within the meaning of R.C. 2961.02(C). Kraus further argues that applying the disqualification statute to remove him from the ballot would be unconstitutional.

### C. Substantial management or control

{¶ 11} Kraus argues that the disqualification statute does not disqualify him from serving as a state representative, because the position does not "involv[e] substantial management or control over the property of a state agency, political subdivision, or private entity" as required by R.C. 2961.02(B). We agree.

{¶ 12} The disqualification statute does not define the phrase "substantial management or control," nor has any case analyzed what the phrase means. As such, the ordinary definition of the terms the General Assembly used at the time of enactment should be used to guide our determination of legislative intent. *Rockies Express Pipeline, L.L.C. v. McClain*, 159 Ohio St.3d 302, 2020-Ohio-410, 150 N.E.3d 895, ¶ 12. A contemporary edition of *Webster's New World College Dictionary* (4th Ed.1999) defined "substantial" as "considerable; ample; large," *id.* at 1428, "manage" as "to have charge of; direct; administer," *id.* at 871, and "control" as "to exercise authority over; direct; command," *id.* at 317. Similarly, *The American Heritage Dictionary of the English Language* (4th Ed.2000) defined "substantial" as "[c]onsiderable in importance, value, degree, amount, or extent," *id.* at 1727, "manage" as "[t]o direct the affairs or interests of," *id.* at 1061, and "control" as "[a]uthority or ability to manage or direct," *id.* at 400.

{¶ 13} Applying these terms, a state representative has no direct management or control over the property of any state agency, political subdivision, or private entity. Rather, the directors of a state agency, political subdivision, or private entity manage and control the property. *See, e.g.*, R.C. 121.07(A) (state-

6

department offices and divisions "shall be under the direction, supervision, and control of the directors of their respective departments").

{¶ 14} Schreiner argues that the General Assembly manages and controls state agencies through the budgeting process and general legislative oversight of state agencies. But such oversight is not the equivalent of directing or administering a state agency in the usual sense. And even if such oversight is considered substantial management or control, the General Assembly acts as a whole in exercising such authority, and each state representative is only 1 of 99 members of one chamber of the assembly. Schreiner has not established that acting alone, a single state representative exercises substantial management or control over a state agency's property.

{¶ 15} Schreiner also argues that the disqualification statute applies here because a state representative has control over office space and must manage legislative assistants. The General Assembly is not explicitly included in the disqualification statute's definition of a state agency. *See* R.C. 2961.02(A)(4) (defining "state agency" as having the same meaning as in R.C. 1.60, which defines "state agency" as "every organized body, office, or agency established by the laws of the state for the exercise of any function of state government"). But even if a state representative's office space is considered part of a state agency, Schreiner has the burden of proof, *see Federle*, 156 Ohio St.3d 322, 2019-Ohio-849, 126 N.E.3d 1091, at ¶ 10, and Schreiner presents no evidence, much less clear and convincing evidence, regarding how much property a state representative individually controls or to what extent he or she controls that property. Every public office or position of public employment involves control over some minimal amount of property—even if just a pen and paper. But the disqualifying statute speaks to "*the* property" (emphasis added) of a state agency, not negligible components of it, and requires "substantial"—i.e., considerable or large— management or control over the property.

**{¶ 16}** In addition to the plain language of R.C. 2961.02, a different statute sheds light on this distinction. R.C. 2921.41(C)(1) provides that a "public official or party official who pleads guilty to theft in office and whose plea is accepted by the court or a public official or party official against whom a verdict or finding of guilt for committing theft in office is returned is forever disqualified from holding any public office, employment, or position of trust in this state." Thus, if a person is convicted of theft in office (a violation of R.C. 2921.41), he or she is prohibited from holding *any* public office, while persons convicted of other specified theft offenses are prohibited from public offices or employment only if the position involves substantial management or control over the property of a state agency, political subdivision, or private entity, R.C. 2961.02(B). And Schreiner has not shown by clear and convincing evidence that the office of state representative involves such management or control.

**{¶ 17}** Because Schreiner has not shown that the office of state representative involves substantial management or control over the property of a state agency, political subdivision, or private entity, *see id.*, he has not established that the board of elections abused its discretion or acted in clear disregard of statutes or applicable legal provisions when it denied his protest, *see Youngstown*, 72 Ohio St.3d at 72, 647 N.E.2d 769. He is thus not entitled to a writ of prohibition.

**{¶ 18}** Because we deny the writ on this ground, we need not address whether a sealed conviction is the equivalent of an expunged conviction for purposes of the disqualification statute. We also do not need to address Kraus's constitutional arguments.

### III. CONCLUSION

**{¶ 19}** The board of elections did not abuse its discretion or act in clear disregard of the applicable law when it denied Schreiner's protest and kept Kraus on the March 2024 primary-election ballot. We therefore deny Schreiner's petition for a writ of prohibition.

8

Writ denied.

FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., concurs in judgment only.

———————————

Baker & Hostetler, L.L.P., and Taylor M. Thompson, for relator.

Kevin J. Baxter, Erie County Prosecuting Attorney, and Gerhard R. Gross and Jason R. Hinners, Assistant Prosecuting Attorneys, for respondents.

Mayle, L.L.C., Andrew R. Mayle, Benjamin G. Padanilam, and Nichole Kanios Papageorgiou, for intervening respondent.

———————————