[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Peterson v. Licking Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-646.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-646

THE STATE EX REL. PETERSON *v.* LICKING COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Peterson v. Licking Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-646.]

*Elections—Prohibition—Mandamus—Disqualification of counsel—Relator, a village mayor, failed to show that she was entitled to writ of prohibition preventing respondent village from setting date for recall election or preventing respondent boards of elections from conducting that election— Relator failed to show that she was entitled to writ of mandamus ordering respondent boards of elections to remove recall election from ballot—Writs denied—Relator's motion to disqualify counsel for respondent village denied.*

(No. 2024-0155—Submitted February 15, 2024—Decided February 21, 2024.)

IN PROHIBITION and MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Jeryne Peterson, seeks writs of prohibition and mandamus against respondents, the Licking County Board of Elections and its members, the Fairfield County Board of Elections and its members, and the village of Buckeye Lake and its council president, Linda Goodman.[1] Peterson is the mayor of Buckeye Lake. Buckeye Lake has scheduled a special election for February 27, 2024, for a vote on the recall of Peterson. She seeks a writ of prohibition preventing the village and the boards of elections from setting the recall-election date and from conducting the recall election on that date. She also seeks a writ of mandamus ordering the boards of elections to remove the recall election from the February 27 ballot. We deny the writs.

## I. FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND

{¶ 2} Buckeye Lake is a village located primarily in Licking County, with a small portion located in Fairfield County. Buckeye Lake has adopted a charter, which provides that its elected officials may be recalled. *See* Buckeye Lake Village Charter, Section 10.02. The recall procedure generally provides that electors of the village may submit a petition to the clerk of the village council demanding the removal of an elected official. *Id.* at Section 10.02(b). The petition must contain the signatures of at least 15 percent of the village's registered voters at the time of the last general election. *Id.* Upon submission of the petition to the clerk of council, the clerk must determine whether the petition contains sufficient valid signatures. *Id.* at Section 10.02(c). If the petition does not contain sufficient signatures, the petitioner is allowed ten days to obtain them. *Id.* If the clerk certifies that the

---

1. The individual members of the Licking County Board of Elections are Freddie Latella, Dave Rhodes, Kaye Hartman, and Park Shai. The individual members of the Fairfield County Board of Elections are Angela D. White, Michael Oatney, Kyle Joseph Farmer, and Paul R. Johnson. In this opinion, "Licking County Board of Elections" refers to both that board and its members, and "Fairfield County Board of Elections" refers to both that board and its members.

petition contains sufficient signatures—either initially or after the ten-day period for curing an insufficient petition—the village council must schedule a recall election to occur between 40 and 65 days after the date of the clerk's certification of the petition's sufficiency to the council. *Id.* at Section 10.02(c) and (d).

{¶ 3} Peterson, the current mayor of Buckeye Lake, was elected to that office in November 2021 for a four-year term. On November 13, 2023, an elector of Buckeye Lake filed with the clerk of council a notice of intent to circulate petitions for the recall of Peterson. On December 11, an elector filed with the clerk part-petitions demanding the recall of Peterson. The clerk then delivered the part-petitions to the Licking County Board of Elections for signature verification. The clerk did not deliver any part-petitions to the Fairfield County Board of Elections, because none of the signatures appeared to be of Fairfield County residents.

{¶ 4} On December 18, the Licking County Board of Elections notified the clerk of council of the number of signatures that the board had determined were valid. On December 20, the clerk notified the petitioner that the recall petition did not contain a sufficient number of valid signatures. On January 2, 2024, the petitioner submitted to the clerk of council additional part-petitions containing additional signatures. The clerk forwarded those part-petitions to the Licking County Board of Elections for signature verification, and on January 5, the Licking County Board of Elections notified the clerk of the new number of signatures that the board had determined were valid.

{¶ 5} Also on January 5, the clerk of council sent a "Certificate of Sufficient Recall Petitions" to the village council, in which the clerk notified the council that she had determined that the recall petition was sufficient and contained elector signatures totaling at least 15 percent of the number of the village's registered voters at the time of the last general election. On January 8, the village council passed an ordinance setting the recall election for February 27. By its terms, the ordinance would be effective only if Peterson did not resign by January 12. On

January 12, the clerk of council found that Peterson had not resigned, and the clerk sent the ordinance to the Licking County Board of Elections.

**{¶ 6}** The Licking County Board of Elections then began the process of conducting the special recall election. Because only 12 registered voters who would be eligible to vote in the recall election then resided in Fairfield County, the Fairfield County Board of Elections assigned those voters to Licking County for purposes of the recall election. *See* R.C. 3503.01(B) (allowing a county board of elections to assign voters residing in a portion of a precinct within that county to an adjoining county for purposes of a special election). On January 30, absentee ballots were sent out and early voting began.

**{¶ 7}** On February 1, Peterson filed her verified complaint for writs of mandamus and prohibition in this court. She seeks a writ of prohibition preventing the village and the boards of elections from setting the recall-election date and from conducting the recall election on that date. She also seeks a writ of mandamus ordering the boards of elections to remove the recall election from the February 27 ballot. She generally argues that the clerk of council did not perform her duty to determine the sufficiency of the petition, because the Licking County Board of Elections actually verified the petition signatures. She also argues that the recall petitioner took more than ten days to file additional signatures after the clerk of council initially determined that the number of signatures was insufficient, in violation of the village's charter.

## II. ANALYSIS

### A. Motion to disqualify the village's attorney

**{¶ 8}** As an initial matter, Peterson filed a motion asking this court to disqualify the village's attorney in this matter—Bradley Nicodemus—from representing the village due to a conflict of interest. We deny the motion.

**{¶ 9}** Nicodemus serves as Buckeye Lake's village solicitor pursuant to a contract authorized under Buckeye Lake's charter. The charter provides, "Prior to

the creation of a Department of Law, the Mayor shall appoint, pursuant to a contract with an individual attorney or law firm, and the Council shall confirm, by a majority vote, such person or firm as legal advisor." Buckeye Lake Village Charter, Section 6.06(a). "The Solicitor or the attorney or law firm engaged * * * shall be the legal advisor, prosecuting attorney and counsel for the Village, and subject to the direction of Council, shall represent the Village in all proceedings in Court or before any administrative board or body." *Id.* at Section 6.06(c). The village contracted with Nicodemus for him to serve as the village's solicitor.

{¶ 10} As a general matter, an attorney may not represent a client if that representation will be directly adverse to another client or there is a substantial risk that the attorney's ability to represent the client will be materially limited by the attorney's responsibilities to another client, a former client, a third person, or the attorney's personal interests. Prof.Cond.R. 1.7(a). A court has inherent authority to supervise attorneys appearing before it, which "necessarily includes the power to disqualify counsel in specific cases." *Morgan v. N. Coast Cable Co.*, 63 Ohio St.3d 156, 161, 586 N.E.2d 88 (1992). But "[t]ypically, courts do not disqualify an attorney on the grounds of conflict of interest unless there is (or was) an attorney-client relationship between the party seeking disqualification and the attorney the party seeks to disqualify." *Id.* at 159.

{¶ 11} The village itself, not any individual officer or employee of the village, is Nicodemus's client. *See* Buckeye Lake Village Charter, Section 6.06(c) (the solicitor "shall be the legal advisor, prosecuting attorney and counsel for *the Village*" [emphasis added]); *see also* Prof.Cond.R. 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its constituents. A lawyer employed or retained by an organization owes allegiance to the organization and not to any constituent or other person connected with the organization"). The village solicitor's duties to the village may at times put him at odds with the village's mayor, but that does not mean that the solicitor is conflicted

from representing the village in such instances. For example, the solicitor may bring a mandamus action against the mayor to compel the mayor to perform her duties. R.C. 733.58; *see also* Buckeye Lake Village Charter, Section 6.06(c) (the solicitor "shall perform all other powers, duties and functions now or hereafter imposed on Village Solicitors under the laws of Ohio"). Nicodemus is representing the village and its council president (in her official capacity) in this case, and Peterson points to no authority suggesting that Nicodemus is conflicted from defending them in a lawsuit brought by Peterson in her personal capacity.

{¶ 12} Peterson also claims that Nicodemus disclosed attorney-client-privileged information at a public village-council meeting in September 2023. But the information allegedly disclosed did not relate to the recall election or to this case, and Nicodemus denies that he disclosed any privileged information. Even if Nicodemus did disclose privileged information, Peterson has not explained how such a disclosure created a conflict of interest that necessitates Nicodemus's disqualification from this case, nor has she explained how his representation of the village interferes with her ability to obtain the writs she requests in this case.

{¶ 13} In addition, Peterson argues that Nicodemus should be disqualified because, in her view, he is no longer the village solicitor. Although Peterson misclassifies this issue as one involving a conflict of interest, she is correct that as a general matter, an attorney may not represent a client if the attorney has been discharged. *See* Prof.Cond.R. 1.16(a)(3).

{¶ 14} The root of this argument lies in a dispute among Nicodemus, Peterson, and the village council. On January 8, Peterson, in her role as mayor of the village, sent Nicodemus a letter informing him that she was terminating him as village solicitor. Nicodemus responded, stating that Peterson's attempt to terminate him as village solicitor violated his contract to represent the village, that only the village council could terminate that contract, and that he remained the village solicitor.

6

**{¶ 15}** A client of an attorney has an absolute right to discharge the attorney at any time, subject to the obligation to compensate the attorney for services rendered. *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 629 N.E.2d 431 (1994), paragraph one of the syllabus. But the village, not Peterson, is Nicodemus's client, and the village has not filed any notice that it has discharged Nicodemus or substituted counsel. Peterson provides no authority supporting her argument that a court may grant a party's motion to disqualify *a different party's* attorney based on an alleged discharge of the attorney. Further, Peterson has not submitted a copy of Nicodemus's contract with the village or any other evidence enabling us to evaluate her argument that the village's mayor may unilaterally discharge a village solicitor like Nicodemus without the approval of the village council. *See Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 39-40 (holding that a party's failure to submit a contract as evidence was fatal to its claim based on the contract).

**{¶ 16}** For these reasons, we deny Peterson's motion to disqualify Nicodemus.

### B. Service

**{¶ 17}** The Licking County Board of Elections alleges that Peterson did not properly serve it with a copy of her complaint; it alleges that Peterson sent the complaint to the wrong email address. The board argues that the complaint should thus be dismissed because Peterson did not serve the complaint in accordance with S.Ct.Prac.R. 12.08(C), which provides that "[a]ll documents in expedited election cases, *except those filed to initiate a case under this rule*, shall be served on the date submitted for filing by personal service, facsimile transmission, or email" (emphasis added). The board does not provide any evidence in support of its allegation that Peterson sent the complaint to the wrong email address. But even if she did send it to the wrong email address, the complaint was the document she

filed to initiate this case, so S.Ct.Prac.R. 12.08(C) is inapplicable. We reject the board's request to dismiss the complaint for failure of service.

### C. Prohibition

{¶ 18} Peterson seeks a writ of prohibition "preventing the Licking County and Fairfield County Boards of Election[s] from holding [the] recall election." To be entitled to a writ of prohibition, Peterson must prove by clear and convincing evidence that (1) respondents exercised or are exercising quasi-judicial power, (2) the exercise of that power was or is unlawful, and (3) she lacks an adequate remedy in the ordinary course of the law. *State ex rel. Federle v. Warren Cty. Bd. of Elections*, 156 Ohio St.3d 322, 2019-Ohio-849, 126 N.E.3d 1091, ¶ 10.

{¶ 19} Neither the Licking County Board of Elections nor the Fairfield County Board of Elections has exercised quasi-judicial authority in this matter. "A board of elections exercises quasi-judicial authority when it decides a protest after a mandatory hearing that includes sworn testimony." *State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 169 Ohio St.3d 161, 2022-Ohio-3138, 202 N.E.3d 684, ¶ 15. And "extraordinary relief in prohibition is not available when there is no statute or other law requiring a board of elections to conduct a quasi-judicial hearing on a protest." *State ex rel. Fritz v. Trumbull Cty. Bd. of Elections*, 165 Ohio St.3d 323, 2021-Ohio-1828, 179 N.E.3d 67, ¶ 10. Here, Peterson did not file an election protest, and neither of the boards of elections conducted a quasi-judicial hearing. Nor does Peterson point to any authority that would have allowed her to file a protest or would have required the boards to hold a quasi-judicial hearing. *See State ex rel. King v. Cuyahoga Cty. Bd. of Elections*, __ Ohio St.3d __, 2023-Ohio-3668, __ N.E.3d __, ¶ 21-22 (a board of elections does not exercise quasi-judicial authority when it holds a recall election for which no election protest was filed); *State ex rel. Wright v. Cuyahoga Cty. Bd. of Elections*, 120 Ohio St.3d 92, 2008-Ohio-5553, 896 N.E.2d 706, ¶ 9 (board of elections did not exercise quasi-judicial authority in placing a city-charter amendment on the ballot, and no legal

authority required the board to conduct a quasi-judicial hearing on protest challenging the ordinance submitting the amendment issue to the electorate; case did not involve written protest against *petitions* or *candidacies*, which would have required quasi-judicial proceedings).

{¶ 20} Peterson also seeks a writ of prohibition against the village and its council president. Specifically, she seeks a writ "preventing [them] from setting a day for holding a recall election until the requirements of the Village Charter are met." But like the boards of elections, the village and its council have not exercised quasi-judicial authority in this matter.

{¶ 21} "Quasi-judicial authority" refers to the "power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Registrar, Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). "When a public entity takes official action but does not conduct proceedings akin to a judicial trial, prohibition will not issue." *State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 27. Here, although the village and its clerk determined the sufficiency of the petition and set a date for the recall election, they "did not receive evidence, place witnesses under oath, or take any other actions that qualify as judicial," *id.* at ¶ 28. It follows that they did not exercise quasi-judicial authority. Accordingly, prohibition will not lie.

### D. Mandamus

{¶ 22} Peterson also requests a writ of mandamus ordering the boards of elections "to remove the special recall election from the February 27, 2024, ballot." To be entitled to a writ of mandamus, Peterson must establish by clear and convincing evidence (1) a clear legal right to the relief requested, (2) a clear legal duty on the part of the boards of elections to provide that relief, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Clark v. Twinsburg*, 169 Ohio St.3d 380, 2022-Ohio-3089, 205 N.E.3d 454, ¶ 16.

**{¶ 23}** Peterson cannot show that she has a clear legal right to an order requiring the boards of elections to remove the recall election from the ballot. Peterson's argument is premised on the belief that the recall petition and the village's ordinance setting the recall election were invalid. But the determination whether the recall petition was sufficient was properly made by the clerk of council—not the boards of elections. *See* Buckeye Lake Village Charter, Section 10.02(c) ("Within ten days after the day on which such [a recall] petition is filed, the Clerk of Council shall determine whether or not it meets the requirements [of this charter]. * * * If the Clerk of Council finds the petition to be sufficient, the Clerk shall, within five days, certify that fact to council"). No provision of either the village's charter or the Revised Code allowed the boards of elections to make that determination.

**{¶ 24}** To be sure, R.C. 3501.39(A) requires a board of elections to reject a petition described in R.C. 3501.38 if the petition violates certain requirements established by law. *See* R.C. 3501.39(A)(4). But here, the Licking County Board of Elections was not presented with a petition pursuant to a statute requiring the board's review of the petition. Rather, the board was presented with an ordinance passed by the village setting a special election. Such an ordinance is not a petition described in R.C. 3501.38. *See State ex rel. King v. Cuyahoga Cty. Bd. of Elections*, __ Ohio St.3d __, 2023-Ohio-3959, __ N.E.3d __, ¶ 19-20; *see also Wright*, 120 Ohio St.3d 92, 2008-Ohio-5553, 896 N.E.2d 706, at ¶ 9 (city ordinance providing for the submission of a proposed charter amendment to the electorate was not a petition under R.C. 3501.39(A)). Therefore, the boards of elections had no duty to reject the recall-election-certification ordinance. Rather, the duty of the boards of elections upon receiving the ordinance was to hold the special election. *See King* at ¶ 20. Thus, mandamus does not lie to order the boards of elections to remove the recall election from the ballot.

**{¶ 25}** Given our holdings in this matter, we need not decide whether the recall petitioner timely submitted the part-petitions or whether the clerk of council complied with her duties regarding determining the sufficiency of the petition. We also need not decide respondents' laches argument. *See id.* at ¶ 24.

### III. CONCLUSION

**{¶ 26}** Peterson has not shown that she is entitled to a writ of prohibition preventing the village from setting a date for the recall election or preventing the boards of elections from conducting the recall election. Nor has she shown that she is entitled to a writ of mandamus ordering the boards of elections to remove the recall election from the ballot. We therefore deny Peterson's request for writs of prohibition and mandamus. We also deny her motion to disqualify the village's counsel.

Writs denied.

KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

FISCHER, J., concurs in judgment only.

_____

The Behal Law Group, L.L.C., and John M. Gonzales, for relator.

Jenny Wells, Licking County Prosecuting Attorney, and Joshua M. Kunkel, Assistant Prosecuting Attorney, for respondents Licking County Board of Elections, Freddie Latella, Dave Rhodes, Kaye Hartman, and Park Shai.

R. Kyle Witt, Fairfield County Prosecuting Attorney, and Amy Brown Thompson, Assistant Prosecuting Attorney, for respondents Fairfield County Board of Elections, Angela D. White, Michael Oatney, Kyle Joseph Farmer, and Paul R. Johnson.

The Nicodemus Law Office, L.P.A., and Bradley S. Nicodemus, for respondents village of Buckeye Lake and Linda Goodman.

_____