[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, Slip Opinion No. 2022-Ohio-3138.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3138

THE STATE EX REL. THE VILLAGE OF MOSCOW ET AL. *v.* CLERMONT COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, Slip Opinion No. 2022-Ohio-3138.]

*Elections—Prohibition and Mandamus—Writs sought to reverse board of elections' certification of petition to surrender village corporate powers to the ballot—R.C. 703.20 requires the filing of village surrender petitions with village legislatures—Writ of prohibition granted, and writ of mandamus denied as moot.*

(No. 2022-1003—Submitted September 6, 2022—Decided September 8, 2022.)

IN PROHIBITION AND MANDAMUS.

_____

**Per Curiam.**

## I. INTRODUCTION

**{¶ 1}** This expedited election case involves a petition to surrender the corporate powers of the village of Moscow. Relators, the village and its mayor, Timothy D. Suter (collectively, "the protesters"), filed a protest to keep the petition off the November 2022 ballot. Respondent, the Clermont County Board of Elections ("the board"), denied the protest and certified the petition to the ballot. The protesters now seek a writ of prohibition reversing the board's certification and a writ of mandamus compelling the board to remove the measure from the ballot. We grant the writ of prohibition and deny the writ of mandamus as moot.

## II. BACKGROUND

### A. Legal background

**{¶ 2}** R.C. 703.20 authorizes a village to surrender its corporate powers. R.C. 703.20(A) provides two possible procedures for initiating a surrender:

> Villages may surrender their corporate powers upon the petition to the legislative authority of the village, or, in the alternative, to the board of elections of the county in which the largest portion of the population of the village resides *as provided in division (B)(1) of this section * * *.*

(Emphasis added). R.C. 703.20(B)(1) permits the filing of a surrender petition with the board of elections *only* after the legislative authority has failed to act on such a petition:

> If the legislative authority of a village fails to act upon the petition within thirty days after receipt of the petition, the electors

may present the petition to the board of elections to determine the validity and sufficiency of the signatures.

**{¶ 3}** Only one court has considered whether the current version of R.C. 703.20 requires a surrender petition to be filed first with a village's legislative authority—the Twelfth District Court of Appeals in *State ex rel. Pringle v. Clermont Cy. Bd. of Elections*, 12th Dist. Clermont No. CA2019-10-078, 2019-Ohio-4528. In *Pringle*, petitions to surrender the corporate powers of the village of Newtonsville were circulated "[b]eginning July 1" and were filed with the board of elections, which voted on July 24 to certify the matter to the ballot. *Id*. at ¶ 2. As the Twelfth District framed the issue, the protester in that case claimed that "the petitions must first be submitted to the village council for 30 days pursuant to R.C. 703.20(B)(1), and that [the board's] July 24 vote violated this 30-day requirement." *Id*.

**{¶ 4}** The Twelfth District denied the protester's request for a writ of mandamus ordering the board to remove the issue from the ballot, holding that the board "did not violate R.C. 703.20 by failing to wait 30 days upon receipt of the petitions before acting to place the issue on the ballot." *Id*. at ¶ 7. The court of appeals emphasized the phrase "or, in the alternative" in R.C. 703.20(A) to suggest that the language permitted petitions to be filed with *either* the legislative authority *or* the board of elections. *Id*. at ¶ 6. In addition, the court observed that it made no sense to require surrender petitions to be submitted to the village legislature: "Inasmuch as the voters, not the village council, are tasked with deciding a municipality's continued existence, voters should also have the option of choosing the process for placing the issue before their fellow electors, and we see no valid reason why petitions to surrender must first be filed with the legislative authority." *Id*. The majority opinion in *Pringle* did not discuss the impact, if any, of R.C. 703.20(A)(1)'s qualifying phrase "as provided in division (B)(1) of this section."

{¶ 5} The Revised Code imposes a second filing requirement on petitioners: "In addition to filing the petition with the board of elections as provided in division (B)(1) of [R.C. 703.20], a copy of the petition shall be filed with the board of township trustees of each township affected by the surrender." R.C. 703.20(B)(2).

## B. Factual background

{¶ 6} The village of Moscow is a municipal corporation located in Washington Township, Clermont County. On August 1, 2022, a petition to surrender the village's corporate powers was filed with the board of elections. The petition was not filed with the legislative authority of the village prior to its submission to the board; in fact, it has not been presented to the village legislature at any time. Nor was the petition filed with the Washington Township Board of Trustees at the same time that it was filed with the board.

{¶ 7} Suter is the mayor of the village. On August 12, Suter and the village filed a protest against the petition with the board. The protest letter raised two issues. First, it claimed that the petition was defective because it was not submitted to the village's legislative authority prior to its submission to the board, as allegedly required by R.C. 703.20(A) and (B)(1). And second, the protest letter argued that the petition should be disqualified because it had not been filed with the Washington Township Board of Trustees, as required by R.C. 703.20(B)(2).

{¶ 8} On August 22, the board held a hearing on the protest, at which it heard sworn testimony and received evidence. The evidence established that the petition had not been submitted to the village legislature but that a copy of the petition had been filed with the township board of trustees on the morning of the hearing.

{¶ 9} The board concluded that it was bound by *Pringle*, 2019-Ohio-4528, which held that R.C. 703.20 did not require petitions to be first filed with the village legislature. Counsel for the protesters argued that *Pringle* was wrongly decided. But the board concluded that it did not have the authority to disregard the Twelfth

District's decision, given that it had been a party in *Pringle* and that *Pringle* was decided by the court of appeals that has jurisdiction over Clermont County.

{¶ 10} Members of the board gave various reasons for rejecting the protesters' second argument. The chief reason seemed to be that R.C. 703.20(B)(2) does not impose a timing requirement for the filing of a petition with the township. In other words, it determined that the petitioners cured the defect by delivering a copy of the petition to the township on the morning of the hearing.

{¶ 11} At the close of the hearing, the board voted four to zero to deny the protest. Thereafter, the board held a special meeting and voted four to zero to certify the petition to the November ballot.

### C. Procedural history

{¶ 12} The protesters commenced this original action for writs of prohibition and mandamus on August 12, 2022. The parties submitted evidence and merit briefs in accordance with the expedited election schedule in S.Ct.Prac.R. 12.08.

### III. LEGAL ANALYSIS

### A. The prohibition standard of review

{¶ 13} Prohibition will lie to bar the placement of an issue on the ballot, so long as the election has not yet been held. *Tatman v. Fairfield Cty. Bd. of Elections*, 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 14. To obtain a writ of prohibition, the protestors must show that (1) the board of elections exercised quasi-judicial power, (2) the exercise of that power was unlawful, and (3) the protesters have no adequate remedy in the ordinary course of the law. *See State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 27. If all three elements are proved, then a writ of prohibition will issue. *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 40.

{¶ 14} When reviewing the decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 29. There is no allegation that the board engaged in fraud or corruption. Instead, the protesters contend that the board clearly failed to follow the applicable legal provisions in placing the petition on the November ballot.

{¶ 15} That the first and third elements of the prohibition analysis are met here is not in dispute. "Quasi-judicial authority" is "the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Registrar, Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). A board of elections exercises quasi-judicial authority when it decides a protest after a mandatory hearing that includes sworn testimony. *State ex rel. Barney v. Union Cty. Bd. of Election*s, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 12. R.C. 3501.39(A) requires a board of elections to conduct a quasi-judicial hearing on a petition protest. *Barney* at ¶ 12. And due to the proximity of the November election, no remedy is available in the ordinary course of the law. *See State ex rel. Yeager v. Richland Cty. Bd. of Elections*, 136 Ohio St.3d 327, 2013-Ohio-3862, 995 N.E.2d 228, ¶ 16. The sole issue, therefore, is whether the board's decision to approve the surrender petition for placement on the ballot was contrary to law.

## B. The prohibition analysis

{¶ 16} In their first proposition of law, the protesters contend that R.C. 703.20 requires the submission of the petition to the village legislature as a condition precedent to its placement on the ballot and that the Twelfth District's holding to the contrary in *Pringle*, 2019-Ohio-4528, was erroneous. In its merit brief, the board does not defend *Pringle* on its merits. Instead, the board simply argues that it was obliged to follow *Pringle*. For the reasons below, we conclude

6

that *Pringle* was wrongly decided and that the board acted in clear disregard of applicable legal provisions.

**{¶ 17}** Prior to 2017, R.C. 703.20 provided only one method for submitting a surrender petition—by filing a petition with the legislative authority of the village. *See* Former R.C. 703.20, 1953 H.B. No. 1. The language authorizing an alternate method—filing the petition with the board of elections—was added by 2017 Am.Sub.H.B. No. 49 ("H.B. 49"), effective September 29, 2017. R.C. 703.20 imposes a limitation on a petitioner's ability to file a petition with the board of elections: the petitioner may do so only "as provided in division (B)(1) of this section." And division (B)(1) speaks of submitting a petition to the board of elections *only* after it has first been submitted to the village legislature and no action has been taken on the petition for 30 days.

**{¶ 18}** The language is not ambiguous, and the board has not suggested an alternative construction of the statute. And when the meaning of a statute is unambiguous and definite, the statute must be applied as written and no further interpretation is necessary. *Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, ¶ 9.

**{¶ 19}** The Twelfth District ignored the statutory language, and in doing so, it created a practical problem. After the "presentation" of a surrender petition, the legislative authority of a village is prohibited from incurring any new liabilities until the petition is finally disposed of, either through an election or through litigation. R.C. 703.21(A). This rule is workable only if the petition is filed with the village legislature. There is no mechanism or requirement for the board to notify the village legislature if a surrender petition is filed with the board, meaning that the village legislature may unknowingly violate the law. Requiring the petition to be filed with the village legislature in all cases avoids that possibility.

**{¶ 20}** Ultimately, *Pringle* was not based on an interpretation of the statute but on a policy decision by the Twelfth District that requiring petitioners to first go

7

to the village legislature with the petition served no purpose. *Pringle*, 2019-Ohio-4528, at ¶ 6 ("we see no valid reason why petitions to surrender must first be filed with the legislative authority"). But it is not the role of the courts to question the wisdom of the General Assembly's policy decisions. *State ex rel. Gilmore v. Lorain Cty. Bd. of Elections*, 160 Ohio St. 165, 169, 114 N.E.2d 821 (1953).

**{¶ 21}** We conclude that *Pringle* was wrongly decided and that R.C. 703.20 requires the filing of surrender petitions with village legislatures.

**{¶ 22}** The board argues that an extraordinary writ should not be issued in this case, because "*Pringle* has not been overruled by this Court * * * [and therefore] the Clermont County Board of Elections was without authority to reject the Petition." We do not fault the board for following *Pringle*, but we determine today that *Pringle* was wrongly decided, which compels the conclusion that the board acted in clear disregard of applicable legal provisions.

**{¶ 23}** We grant a writ of prohibition reversing the board's certification of the surrender petition to the November ballot.

### C.  The failure to file the petition with the township

**{¶ 24}** In their original protest letter, the protesters objected to the fact that the surrender petition had not been filed with the board of township trustees, as required by R.C. 703.20(B)(2). And after the petition was delivered to the township on the morning of the hearing, the protesters argued that that delivery should have occurred at the same time that the petition was delivered to the board. The board rejected this argument because it found nothing in R.C. 703.20(B)(2) that mandated when the petition had to be filed with the township. Because we hold that the protesters are entitled to a writ of prohibition based on R.C. 703.20(A) and (B)(1), as discussed above, it is unnecessary for us to consider this alternative argument.

### D.  The mandamus claim

**{¶ 25}** To be entitled to a writ of mandamus, the protesters must establish by clear and convincing evidence that (1) they have a clear legal right to the

requested relief, (2) the board has a clear legal duty to provide it, and (3) they do not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. In this case, the mandamus analysis is identical to the prohibition analysis. Because we grant a writ of prohibition, the request for a writ of mandamus is moot.

## IV. CONCLUSION

**{¶ 26}** For the reasons stated above, we grant the request for a writ of prohibition and deny the request for a writ of mandamus as moot.

Writ of prohibition granted

and writ of mandamus denied as moot.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

————————————

Strauss Troy Co., L.P.A., Emily Supinger, Matthew W. Fellerhoff, and Stephen E. Schilling, for relators.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Brian C. Shrive, Julia B. Carney, and Joseph T. Mooney, Assistant Prosecuting Attorneys, for respondent.

————————————