[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-379.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-379

THE STATE EX REL. THOMAS ET AL. *v.* WOOD COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-379.]**

*Elections—Prohibition and mandamus—Writs sought to compel board of elections to remove zoning-amendment referendum from primary-election ballot— Relators failed to demonstrate that board of elections abused its discretion or disregarded applicable law in certifying referendum for placement on ballot—Writs denied.*

(No. 2024-0072—Submitted January 31, 2024—Decided February 2, 2024.)

IN PROHIBITION and MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election matter, relators, Theodore Thomas and T Thomas Properties, L.L.C. ("TT Properties"), seek writs of prohibition and mandamus to order respondent, the Wood County Board of Elections ("the board"),

to remove a zoning-amendment referendum from the March 19, 2024 primary-election ballot. Relators have also filed a motion for leave to amend the caption of their complaint to comply with R.C. 2731.04's requirement that a mandamus claim be brought "in the name of the state on the relation of the person applying."

{¶ 2} We grant relators' motion for leave to amend the caption of their complaint. But because the board did not abuse its discretion or disregard applicable law in certifying the referendum for placement on the ballot, we deny relators' request for writs of mandamus and prohibition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} In 2023, Thomas purchased a parcel of real property located at 0 Bailey Road (the "Bailey Road property") in Lake Township, Wood County; that property is zoned "R-2 Residential." The Bailey Road property is currently an abandoned junkyard surrounded by a barbed-wire fence. When the township adopted its zoning resolution in 1963, the Bailey Road property was zoned for residential use even though a junkyard was already being operated on the property. Since 1963, the Bailey Road property has never been used for residential purposes. TT Properties, of which Thomas is the manager and sole member, is the current owner of the Bailey Road property.

{¶ 4} TT Properties also owns a parcel located at 5826 Woodville Road in Lake Township, which is adjacent to and behind the Bailey Road property. A car wash is operated on the Woodville Road property, which is zoned "B-2 General Commercial." Thomas would like to combine the Bailey Road and Woodville Road properties into one parcel with ingress and egress to the combined parcel solely through the Woodville Road property. According to the Lake Township zoning map, no parcel fronting Bailey Road is currently zoned B-2 General Commercial.

**{¶ 5}** In July 2023, Thomas filed an application to change the zoning of the Bailey Road property from R-2 Residential to B-2 General Commercial so that he could construct self-storage facilities on the property. The application states:

> TO THE TRUSTEES OF LAKE TOWNSHIP
> Application is submitted herewith requesting that the Zoning Resolution of Lake Township be * * * AMENDED to:
>
> Request zoning change from R-2 Residence to B-2 General Commercial.
> Address – 0 – Bailey Rd. H28-712-110202027000
> Theodore Thomas (owner) request[s] the change to construct self-storage facilities.
> The legal description of the property is:
> Parcel # H28-712-110202027000
> * * *
> The request for zoning change is being submitted because:
> (state reason or proposed use)
>
> From R-2 – B-2 for new construction of self-storage facilities.

**{¶ 6}** The Lake Township Zoning Commission voted unanimously that the requested zoning amendment should be approved and forwarded its recommendation to the Lake Township Board of Trustees. On September 19, the township trustees adopted the amendment, to become effective 30 days later. As a

condition of rezoning, the trustees required that the Bailey Road property be combined with the adjacent Woodville Road car-wash property.[1]

**{¶ 7}** On the date of the zoning amendment's adoption, R.C. 519.12(H), which governs the adoption of proposed zoning amendments by township boards of trustees and referendums on adopted zoning amendments, provided:

> The proposed amendment, if adopted by the board, shall become effective in thirty days after the date of its adoption, unless, within thirty days after the adoption, there is presented to the board of township trustees a petition, signed by a number of registered electors residing in the unincorporated area of the township or part of that unincorporated area included in the zoning plan equal to *not less than eight per cent* of the total vote cast for all candidates for governor in that area at the most recent general election at which a governor was elected, requesting the board of township trustees to submit the amendment to the electors of that area for approval or rejection * * *. Each part of this petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents.

(Emphasis added.) Former R.C. 519.12(H), 2018 Sub.H.B. No. 500 (effective Mar. 22, 2019) ("H.B. 500").

---

1. According to Thomas, the township trustees also required that access to the Bailey Road property be only via the Woodville Road car-wash property. However, neither Thomas's application nor the minutes from the township trustees' meeting at which the amendment was adopted state this condition.

**{¶ 8}** In the 30 days following the trustees' adoption of the zoning amendment, circulators obtained signatures on a referendum petition to submit the amendment to voters at the March 19, 2024 primary election. On October 3, 2023—after the trustees adopted the proposed zoning amendment but before the referendum petition was submitted—a new version of R.C. 519.12(H) took effect. Amended R.C. 519.12(H) increased the number of signatures that must be submitted by petition before a referendum on a zoning amendment will be placed on a ballot. Under the amended statute, the number of signatures must be equal to at least 15 percent of the total votes cast for all candidates for governor in that area at the most recent gubernatorial election. 2023 Am.Sub.H.B. No. 33 ("H.B. 33"). The amendment also changed the language of the petition-for-zoning-referendum form to include the 15 percent requirement, but it made no other changes to the statute. *Id.*

**{¶ 9}** On October 18, Jean Garrison, a resident of Lake Township, submitted the petition to the township trustees. The petition consisted of 31 part-petitions containing 470 signatures. The petition summarized the proposed zoning amendment as follows:

> Rezone from R-2 (Residential District) to B-2 (General Business District) Parcel Number H28-712-1100202027000, commonly referred to as "0 Bailey Road, Northwood, OH 43619" and legally described as:
>
> Lot number thirty-three (33) in Ketcham's Cresceus Farms, an Addition in Lake Township, Wood County, Ohio, excepting therefrom the following described parcel: That part of Lot number thirty-three (33) described as follows: commencing at a point where the north line of said Lot number thirty-three (33) intersects the east side of Bailey Road; thence one hundred four and nine tenths (104.9)

feet east along said north line of Lot thirty-three (33) to the point where said north line turns northeast; thence southwest along a continuation of the boundary line between Lots thirty-three (33), thirty-five (35), and thirty-six (36) to Bailey Road; thence in a northerly direction to the point of beginning, being a triangle out of the northwest corner of said Lot thirty-three (33) containing one-eight [sic] (1/8) of an acre, more or less.

Reference: Lake Township Zoning Commission Application # 2023-144.

{¶ 10} The township trustees determined that the petition was facially valid and certified it to the board in accordance with R.C. 519.12(H). The board determined that the petition contained 382 valid signatures, which was more than 8 percent but less than 15 percent of the number of voters in the unincorporated territory of Lake Township who voted in the 2022 gubernatorial election.

{¶ 11} At its regular meeting on December 21, the board considered the certification of candidates and issues that would appear on the March 19 ballot, including certification of the referendum on the proposed zoning amendment. The board voted unanimously to certify the referendum for placement on the ballot.

{¶ 12} On December 29, Thomas filed a protest with the board. Thomas protested the validity and sufficiency of the referendum petition on six grounds:

1. The petition does not satisfy the 15 percent signature requirement of R.C. 519.12(H).

2. The petition violates R.C. 519.12(H) because it does not set forth a brief summary of the zoning amendment's contents.

3. Signatures on the referendum petition were coerced, in violation of R.C. 731.40.

4. The petition does not contain the statutorily mandated election-falsification statement.

5. Any refusal to approve the zoning amendment would result in an unconstitutional taking of the Bailey Road property without just compensation.

6. The board failed to provide notice of its December 21 meeting at which it certified the referendum for placement on the ballot.

{¶ 13} In addition to Thomas's protest, the township trustees passed a resolution "to protest the [board's] acceptance of the referendum petition as it relates to [the Bailey Road property]." In their protest, the trustees asserted three of the same grounds that Thomas raised (the signature requirement, notice of the board's meeting, and unconstitutional taking of property). The trustees also protested on the grounds that (1) the referendum "stands to disrupt the operation and legal development of private property" in the township and (2) the zoning change approved by the township trustees does not pose any threat to the health, safety, or welfare of the immediate area.

{¶ 14} On January 9, 2024, the board held a hearing on the protests. The board heard sworn testimony from three witnesses and arguments from counsel representing Thomas and the township trustees and counsel representing the referendum petitioners. The board also allowed the parties to submit various exhibits as evidence.

{¶ 15} The board did not consider the argument that denying a zoning change to the Bailey Road property would constitute a taking without just compensation, noting that "it [was] outside of the powers granted to [the board] to consider." For the same reasons, the board did not consider the township trustees' objections that the referendum petition would disrupt the operation and development of private property in the township and that the approved zoning change did not pose a threat to health, safety, or welfare of the immediate area. Following the hearing, the board unanimously overruled the remainder of Thomas's and the township trustees' arguments and affirmed its certification of the referendum for placement on the March 19 ballot.

**{¶ 16}** Relators commenced this action on January 12, 2024, seeking writs of prohibition and/or mandamus ordering the board to sustain Thomas's protest and to prevent the board from certifying the zoning-amendment referendum for placement on the March 19 ballot.[2] We sua sponte designated this case as an expedited election matter under S.Ct.Prac.R. 12.08 and set an expedited schedule for the board to file an answer to the complaint and for the parties' to submit evidence and merit briefs. 172 Ohio St.3d 1448, 2024-Ohio-136, __ N.E.3d __. Relators filed a motion for leave to amend the caption of their complaint to include "State ex rel." before their names, indicating that they are bringing this action in the name of the state on their relation, in compliance with R.C. 2731.04.

**{¶ 17}** Relators and the board have filed evidence and merit briefs. Amici curiae Joseph Zemenski and Garrison, registered electors in Lake Township who are proponents of the referendum petition at issue in this case, have filed a brief urging denial of the writs.

## II. MOTION FOR LEAVE TO AMEND CAPTION

**{¶ 18}** Relators move to amend the case caption to specify that this action is being brought in the name of the state on their relation. The board did not file a response to the motion but argues in its merit brief that relators' complaint should be dismissed because a "complaint for an extraordinary writ must be brought by petition in the name of the state on relation of the person applying."

**{¶ 19}** As an initial matter, there is no requirement that a complaint for extraordinary relief *in prohibition* be brought in the name of the state on the relation of the applicant. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 16. R.C. 2731.04 does require that an application for *mandamus* be brought in the name of the state on relation of the applicant. The failure of a relator in mandamus to do so is a ground for dismissal of the complaint. *Litigaide, Inc. v.*

_____

2. The board of township trustees, though a protestor before the board, is not a party in this action.

*Custodian of Records for Lakewood Police Dept.*, 75 Ohio St.3d 508, 664 N.E.2d 521 (1996).

{¶ 20} However, before the board sought dismissal for this defect, relators filed their motion to amend. This court has granted such motions in the past, noting the policy "favoring liberal amendment of pleadings and the resolution of cases on their merits rather than upon pleading deficiencies." *State ex rel. Rust v. Lucas Cty. Bd. of Elections*, 100 Ohio St.3d 214, 2003-Ohio-5643, 797 N.E.2d 1254, ¶ 6, citing *State ex rel. Huntington Ins. Agency, Inc. v. Duryee*, 73 Ohio St.3d 530, 533, 653 N.E.2d 349 (1995). We therefore grant relators' motion to amend the caption of their complaint.

### III. ANALYSIS

{¶ 21} To obtain a writ of prohibition, relators must show that (1) the board exercised quasi-judicial power, (2) the exercise of that power was unauthorized by law, and (3) relators have no adequate remedy in the ordinary course of the law. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 27. A board of elections exercises quasi-judicial authority when, as here, it decides a protest after a mandatory hearing that includes sworn testimony. *State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 169 Ohio St.3d 161, 2022-Ohio-3138, 202 N.E.3d 684, ¶ 15; *see also State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 12 (R.C. 3501.39 requires a quasi-judicial hearing on a protest to a referendum petition).

{¶ 22} To obtain a writ of mandamus, relators must establish by clear and convincing evidence (1) a clear legal right to have the board remove the zoning-amendment referendum from the ballot, (2) a clear legal duty on the part of the board to do so, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Clark v. Twinsburg*, 169 Ohio St.3d 380, 2022-Ohio-3089, 205 N.E.3d 454, ¶ 16.

**{¶ 23}** In this case, relators lack an adequate remedy in the ordinary course of the law because the election is less than two months away. *Id.* As to the remaining elements for obtaining a writ of prohibition or mandamus, relators must show that the board engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable law in denying their protest. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9. Relators have not alleged fraud or corruption here. Therefore, the relevant inquiry is whether the board abused its discretion or clearly disregarded applicable law in denying Thomas's protest and certifying the referendum for placement on the ballot.

### A. Jurisdiction over the Mandamus Claim

**{¶ 24}** The board argues that relators' mandamus claim is a disguised claim for a declaratory judgment and a prohibitory injunction and that this court should therefore dismiss it for want of jurisdiction. The board contends that relators seek an order preventing it from placing the referendum on the March 19 ballot. *See Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 8-10 (dismissing mandamus claim for lack of jurisdiction because it was "an ill-disguised request for prohibitory injunctive relief: to prevent [a candidate's] candidacy at the November 5, 2002 general election").

**{¶ 25}** Notwithstanding *Whitman*, we have held that "[e]xtraordinary relief in mandamus is appropriate to keep a measure from the ballot when there is a 'failure to comply with statutory ballot-access requirements.' " *State ex rel. Fritz v. Trumbull Cty. Bd. of Elections*, 165 Ohio St.3d 323, 2021-Ohio-1828, 179 N.E.3d 67, ¶ 12, quoting *State ex rel. Cornerstone Developers, Ltd. v. Greene Cty. Bd. of Elections*, 145 Ohio St.3d 290, 2016-Ohio-313, 49 N.E.3d 273, ¶ 22. This is the relief that relators seek in their mandamus claim. Relators seek an affirmative act of the board: they seek a writ of mandamus ordering the board to sustain Thomas's protest, which would result in removing the referendum from the ballot, because

they claim that the referendum petition does not meet certain statutory requirements. Accordingly, relators have stated a proper mandamus claim over which we have jurisdiction.

## B. Validity of the Referendum Petition

{¶ 26} Relators argue that the board abused its discretion or disregarded applicable law in four ways. First, they argue that the referendum petition is invalid under R.C. 519.12(H) because it does not contain enough signatures to qualify for placement on the ballot. Second, they contend that the referendum petition failed to contain a valid "brief summary" of the zoning amendment at issue. Third, relators argue that a "refusal to amend the zoning" of the Bailey Road property would constitute an unconstitutional taking of their property without just compensation. Finally, relators argue that the board's decision to certify the referendum for placement on the ballot is invalid because the board failed to give proper notice under R.C. 121.22(F) of its December 21, 2023 meeting. None of relators' arguments has merit.

### 1. The Petition-Signature Requirement

{¶ 27} The parties dispute the number of signatures required to qualify the referendum for placement on the ballot. The board agreed with the referendum petitioners' argument at the protest hearing that the applicable signature requirement was the one in effect on September 19, 2023, the date that the township trustees adopted the proposed zoning amendment. Under the law in effect on that date, to qualify for placement on the ballot, a referendum petition on a zoning amendment needed to contain a number of signatures equal to at least 8 percent of the total votes cast for governor in the township at the most recent gubernatorial election. *See* Former R.C. 519.12(H), H.B. 500. Under this version of R.C. 519.12(H), the referendum petition had enough signatures to qualify for placement on the ballot.

{¶ 28} In contrast, relators argue that the version of R.C. 519.12(H) that became effective on October 3, 2023, controls the validity of the referendum petition at issue. Amended R.C. 519.12(H) increased the signature requirement for a zoning-referendum petition to at least 15 percent of the total votes cast for governor in the township at the most recent gubernatorial election. And because the referendum petition was filed with the trustees on October 18, 2023, relators contend that the version of R.C. 519.12(H) that became effective on October 3 is the controlling version. Relators note that although H.B. 33, which amended R.C. 519.12(H), was enacted on July 4, 2023, the amendment did not go into effect until 90 days later (i.e., October 3, 2023). This 90-day period, say relators, gave the public ample time to become aware of the impending change in the law, leaving the referendum petitioners no excuse for noncompliance with the amended statute. And if amended R.C. 519.12(H) controls this case, then the referendum petition does not qualify for placement on the ballot.

### a. Prospective Application of R.C. 519.12(H)

{¶ 29} Effective October 3, 2023, R.C. 519.12(H) provides:

> The proposed amendment, if adopted by the board [of township trustees], shall become effective in thirty days after the date of its adoption, unless, within thirty days after the adoption, there is presented to the board of township trustees a petition, signed by a number of registered electors residing in the unincorporated area of the township or part of that unincorporated area included in the zoning plan equal to not less than fifteen per cent of the total vote cast for all candidates for governor in that area at the most recent general election at which a governor was elected * * *."

12

**{¶ 30}** Under the statute, the date of the township trustees' adoption of a proposed zoning amendment determines the effective date of the amendment and is also used to determine the deadline for submitting referendum petitions. The requirements of the referendum petition are tied specifically to the date of the adoption of the zoning amendment. Applying amended R.C. 519.12(H) only to zoning amendments adopted after the effective date of the amended statute—and referendum petitions associated with such amendments—gives effect to the plain meaning of the statute, as well as to the rule that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective," R.C. 1.48. *See Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 19-21.

**{¶ 31}** Relators do not argue that amended R.C. 519.12(H) was expressly made retrospective by the General Assembly. They argue, however, that this court "has had occasion to review claimed retroactive changes in the law and held under circumstances similar to the circumstances in this case that the change in the law did not preclude the Petitioners from obtaining the requisite number of signatures." The only case relators cite for this proposition is *State ex rel. Ohioans for Secure & Fair Elections v. LaRose*, 159 Ohio St.3d 568, 2020-Ohio-1459, 152 N.E.3d 267 ("*Ohio-SAFE*"). But there is nothing about *Ohio-SAFE* that remotely resembles the issue before us in this case. There was no statute addressing petition-signature requirements at issue in *Ohio-SAFE*, much less a statutory change in the number of signatures needed for a petition to qualify for placement on a ballot.

**{¶ 32}** Relators have failed to demonstrate that the board acted in clear disregard of applicable law in determining that the version of R.C. 519.12(H) that was in effect on the date the township trustees adopted the zoning amendment (September 19, 2023) controlled the number of signatures required for a referendum petition (i.e., a number equal to at least 8 percent of the total votes cast

in the township for governor at the most recent gubernatorial election). The referendum petition in this case satisfied that requirement.

### b. Article II, Section 28 of the Ohio Constitution is not implicated

{¶ 33} The board and amici also argue that if the amended version of R.C. 519.12(H) applies to the referendum petition at issue, the statute would be unconstitutionally retroactive. "Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws that, when applied, act to impair vested rights." *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 13.

{¶ 34} It is unnecessary for us to reach the constitutional retroactivity arguments in this case. "Inquiry into whether a statute may be constitutionally applied retrospectively continues only after an initial finding that the General Assembly expressly intended that the statute be applied retrospectively." *Id.* at ¶ 14. Since the General Assembly did not express that amended R.C. 519.12(H) be retroactive, any constitutional analysis under Section 28, Article II is unnecessary. And for the reasons explained above, under a prospective application of amended R.C. 519.12(H), the 15 percent signature requirement does not apply to the referendum petition at issue in this case.

### 2. Summary of Zoning Amendment

{¶ 35} Relators next argue that the referendum petition lacks an adequate summary of the zoning amendment. R.C. 519.12(H) requires each part-petition calling for a referendum on a zoning amendment to contain "a brief summary of [the amendment's] contents." A referendum petition must strictly comply with this requirement. *State ex rel. Quinn v. Delaware Cty. Bd. of Elections*, 152 Ohio St.3d 568, 2018-Ohio-966, 99 N.E.3d 362, ¶ 30.

{¶ 36} The phrase "brief summary of its contents" in R.C. 519.12(H) "refers to the zoning resolution, motion, or application passed or approved by the board of township trustees." *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections*, 83 Ohio St.3d

298, 300-301, 699 N.E.2d 916 (1998); *see also State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 31. The summary must be accurate and unambiguous. *S.I. Dev. & Constr., L.L.C. v. Medina Cty. Bd. of Elections*, 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17. If a summary is misleading, inaccurate, or contains material omissions that would confuse the average person, the petition is invalid and the referendum may not be submitted for a vote. *State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 38.

{¶ 37} No written zoning resolution was submitted as evidence in this case. The record reflects that instead of passing a resolution, the township trustees simply approved Thomas's application for a zoning amendment. Thus, the relevant inquiry is whether the petition accurately summarized Thomas's application, which contained (1) a request to change the zoning of the Bailey Road property from "R-2 Residence" to "B-2 General Commercial," (2) the address and legal description of the property, and (3) a statement that Thomas intended to construct self-storage facilities on the Bailey Road property.

{¶ 38} We have held that the referendum-petition summary of a zoning amendment must (1) identify the location of the relevant property and (2) inform the reader of the present zoning status of the land and the precise nature of the requested change. *State ex rel. Donaldson v. Delaware Cty. Bd. of Elections*, 166 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, ¶ 14-15. If material information is omitted, resulting in a summary that would confuse the average person, the referendum petition is invalid. *State ex rel. T-Bill Dev. Co., L.L.C. v. Union Cty. Bd. of Elections*, 166 Ohio St.3d 250, 2021-Ohio-3535, 185 N.E.3d 50, ¶ 16.

{¶ 39} Relators argue that the referendum petition's summary was defective because it failed to apprise readers of (1) the present zoning status of the Bailey Road property, (2) the precise nature of the requested change, and (3) the present use of the Bailey Road property. The first two of these contentions are without

merit because they are belied by the text of the referendum-petition summary. The summary in this case identified the property affected by the zoning change by its street address, parcel number, and legal description, and it stated that the proposed amendment would rezone the property "from R-2 (Residential District) to B-2 (General Business District)." This statement includes both the present zoning status and the nature of the zoning change, and relators do not contend that the statement was inaccurate in this respect.

{¶ 40} Relators also contend that the referendum-petition summary is invalid because it does not include any information about the present or historical use of the Bailey Road property. Though currently zoned residential, relators argue that petition signers should have been apprised of the facts that (1) the most recent approved conditional use for the Bailey Road property was for baseball batting cages, (2) the property had historically been used as a junkyard, and (3) the property is currently surrounded by a six-foot-high fence. For this argument, relators rely on *Donaldson*, in which we found a referendum petition's summary deficient because, among other reasons, it did not describe "the current use of the property." *Id.*, 166 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, at ¶ 15. Relators also emphasize language from *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 80 Ohio St.3d 176, 685 N.E.2d 502 (1997), a case in which this court stated that the "present use" of property was "material" information and that its omission renders a referendum-petition summary invalid. *Id.* at 181.

{¶ 41} Both cases are distinguishable. In *Donaldson*, the board of elections sustained a protest to a referendum petition because the petition's summary of a proposed zoning amendment was deficient in numerous respects. Our observation that the summary did not describe "the current use of the property" came within a larger discussion of the referendum petition's failure to "describe the nature of the zoning amendment." *Id*. at ¶ 15. We held that "the petition must summarize the contents of the zoning amendment passed by the township trustees." *Id.* at ¶ 13.

Thus, the better reading of *Donaldson* is that the absence of a description of the current use rendered the referendum-petition summary deficient because the current use was part of the zoning amendment as passed by the township trustees. Here, the zoning amendment adopted by the trustees did not describe the current use of the property.

{¶ 42} *O'Beirne* is similarly distinguishable. In that case, the reason the property's present use was material information and was thus required to be included in the referendum-petition summary is that the zoning resolution included that information. *Id.* at 181. Indeed, the zoning resolution at issue in *O'Beirne* had incorporated the application for the zoning amendment, *id.* at 176, which included a page that detailed "the present use and zoning of the property" at issue, *id.* at 181. The referendum-petition summary, however, did not include that information. *Id.* In contrast here, Thomas's application, as approved by the township trustees, did not contain any information about the present use of the property. The referendum petitioners in this case were not required to include information about present use that was not contained in the approved zoning-amendment application.

{¶ 43} Relators also argue that the referendum-petition summary omitted the fact that after the zoning amendment and proposed development, access to the Bailey Road property would only be from the Woodville Road property. However, this information was not contained in Thomas's application for a zoning amendment; nor was it contained in the trustees' approval of Thomas's zoning-amendment application. Accordingly, there was no reason for the referendum-petition summary to include this information.

{¶ 44} For the foregoing reasons, the board did not abuse its discretion or disregard applicable law in concluding that the referendum-petition summary satisfied R.C. 519.12(H).

### 3. *Constitutionality of the Referendum*

{¶ 45} Relators also argue that the board should not have certified the referendum for placement on the ballot because any refusal to amend the Bailey Road property's zoning to commercial use would "constitute an unlawful taking of property without just compensation." In other words, relators argue that the referendum, if approved by the voters, would be unconstitutional.

{¶ 46} The board did not abuse its discretion or disregard applicable law in certifying the referendum for placement on the ballot, despite relators' protest of its constitutionality. "The boards of elections * * * do not have authority to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms." (Emphasis deleted.) *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 11. "An unconstitutional amendment may be a proper item for referendum or initiative. Such an amendment becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction." *Id.*; *see also State ex rel. Cramer v. Brown*, 7 Ohio St.3d 5, 6, 454 N.E.2d 1321 (1983) ("this court will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature"). Accordingly, relators' objection to the constitutionality of keeping the Bailey Road property zoned for residential use is not a proper basis to invalidate the referendum petition.

### 4. *Notice of the Board's December 21 Meeting*

{¶ 47} Relators also contend that the referendum should not qualify for placement on the ballot because the board failed to provide sufficient notice that it would consider the referendum petition at its December 21, 2023 meeting.

{¶ 48} R.C. 121.22(F) provides:

> Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all

regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action.

{¶ 49} Relators argue that the board was required to provide notice "of the time, place, and purpose of the meeting" at which the referendum petition was going to be considered. They further contend that *individualized* notice was required to be given to relators, the township trustees, the county prosecutor, and the township police chief, all of whom were "interested" in the petition. Relators argue that because the board failed to satisfy these notice requirements, its certification of the referendum for placement on the ballot is invalid.

{¶ 50} Relators' argument rests on the incorrect premise that the board was required to give individualized notice of its December 21 meeting, including a specific description of the matters that would be discussed at that meeting. But R.C. 121.22(F) does not require that such notice be given. The December 21 meeting was a *regular meeting* of the board. All that the statute requires for a regular meeting is that a public body give notice through "a reasonable method" it has established, "whereby any person may determine the time and place of all regularly scheduled meetings." R.C. 121.22(F). In this case, the board found that the December 21 regular meeting "was noticed in the normal fashion, both with public posting and on the [board's] website," which relators do not dispute. Indeed, Thomas testified at the protest hearing that he saw the notice of the December 21 meeting on the board's website.

{¶ 51} Moreover, though not required for regular meetings, the meeting notice on the board's website included a link to yet another notice that stated that the December 21 meeting was for the purpose of "certifying candidates and issue

petitions to the 2024 primary election." Thus, any person who saw the board's notice of its December 21 regular meeting could have also learned that the board would consider the certification of candidates and issue petitions at that meeting. Relators have not established that the board violated R.C. 121.22(F)'s meeting-notice requirement.

{¶ 52} Relators contend that even if the board's notice satisfied statutory requirements, the notice was insufficient and it violated their procedural-due-process rights. But this argument is flawed for at least two reasons. The first requirement of a procedural-due-process claim is a right or interest that is entitled to due-process protection. *State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, ¶ 35. In this case, relators have not articulated the right or interest that they were deprived of by virtue of the board's holding a meeting without specifically informing them that the referendum's certification for placement on the ballot would be considered. And even assuming that the right to appear at the December 21 meeting to oppose certification of the referendum for placement on the ballot is a protected liberty or property interest for due-process purposes, relators cannot establish that they have been deprived of this right without due process of law. This extraordinary-writ proceeding, wherein relators are afforded the opportunity to challenge the board's action, provides all the process that relators are due. *See State ex rel. Nauth v. Dirham*, 161 Ohio St.3d 365, 2020-Ohio-4208, 163 N.E.3d 526, ¶ 24.

### III. CONCLUSION

{¶ 53} For the foregoing reasons, we grant relators' motion to amend the case caption of their complaint and deny the writs.

Writs denied.

KENNEDY, C.J., and FISCHER, DEWINE, and DETERS, JJ., concur.

STEWART, J., concurs, with an opinion joined by DONNELLY and BRUNNER, JJ.

———————————

**STEWART, J., concurring.**

{¶ 54} I join the majority opinion in full but write separately to point out that applying amended R.C. 519.12(H) to proposed zoning amendments that were adopted before the statute's effective date would effectively change the signature requirement for a referendum petition during the period that petitioners are obtaining signatures. This would be inconsistent with our instruction to apply R.C. 519.12(H) liberally in favor of the citizens' right of referendum. *See State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 36.

DONNELLY and BRUNNER, JJ., concur in the foregoing opinion.

———————————

The Law Office of Norman A. Abood, Norman A. Abood, and Tyler J. Lantzsch, for relators.

John A. Borell, Special Wood County Prosecuting Attorney, for respondent.

Nolan Law, L.L.C., and Joshua J. Nolan, urging denial of the writs, for amici curiae Jean Garrison and Joseph Zemenski.

———————————